Thank you and good morning, Your Honors, and may it please the Court, my name is Robert Godet, Jr. and I represent appellant Harvinder Singh. I would like to reserve two minutes for rebuttal. The first issue before the Court is whether the District Court erred in holding it had jurisdiction over this case on the basis of a finding that American Honda Finance Corporation had been sued in two class actions over the same subject matter in the preceding three years. A second question before the Court is whether, in granting summary judgment to both defendants, the District Court made mistaken findings a fact and refused to acknowledge that certain facts are in dispute, including whether Mr. Singh got the add-on products that were promised to him, and if so, whether he paid for them. In order to determine whether the District Court had jurisdiction and whether Mr. Singh did not get the products that were promised to him, it is essential to review the key facts briefly, which I provided to Your Honors and to opposing counsel in folders that simply contain selected portions from the excerpts of record. The first is marked ER 826 to ER 838. It is the Chico lawsuit in the state of California. I highlighted on the front page the words on behalf of themselves and all others similarly situated. These are the words that the appellee cherry-picked to try and prove that this is a class action, but nothing in here suggests this is a class action. There is no citation to the California rules for class actions. Does someone have to use the word class action in a complaint for it to apply? I don't know that you need to use the word class action, Judge Bichon, but you do, it's very clear that you do have to cite to Rule 23 in the federal context or to the California equivalent for this to be a class action. Here there's no citation to those rules and the rule in California, there are two of them that are mentioned in the briefing and neither one is mentioned, neither is Rule 23. None of the indicia of a class action are present in this complaint. There's no citation of the Rule 23. There's no class definition. There's no proposed class. There's nothing about this makes it a class action. The words on behalf of others simply exist here because this was a case seeking injunctive relief, which of course could affect other people, but if you turn to page ER 830, you'll see this is also a case about something called EnviroGuard. EnviroGuard is not at issue in the present case, so this is also a different subject matter. Now turning to the next complaint, ER 840 to ER 851, this is the Gonzalez lawsuit in California. Again, the appellee's cherry- picked words that are highlighted on the cover page, on behalf of herself and all others similarly situated. Aside from that, which is not controlling, there's nothing in here that indicates this is a class action lawsuit. No citation to Rule 23 or its California equivalent. Case law holds that when such citations to Rule 23 and its equivalent are lacking, the case is not considered a class action for the purposes of the local controversy exception to COFA jurisdiction. If you would please turn to page ER 844, you also see that this Gonzalez lawsuit, which is one of only two lawsuits cited by appellees when they claimed there were class actions against American Honda, you'll see that this one was about an item called Lojack, an item called Service Contract, and an item called Easy Care Gap, which is a type of insurance, I believe. None of these items is at stake in the present litigation, so this is also a completely different subject matter. So the next point I wanted to make is turning to another key fact, ER 590. It's a page from the deposition transcript of Defendant Human Badagi, who's sitting back there with the nice checkered shirt. I had the opportunity to depose Mr. Badagi in a separate lawsuit. No depositions were taken in this lawsuit. No evidence was produced. But in the separate lawsuit in Employment Litigation Action, Mr. Badagi testified, as shown in highlighting, if it's already on the car, it's on that sticker. And by that sticker, he meant this small sticker, the dealer's addendum. And if you'd please turn to the next page, that's ER 130. This is the small sticker he was referring to. Before you get to the subject matter, going back to the jurisdictional issue, I mean, didn't you basically abandon the jurisdictional issue when you filed a Federal claim or when, Mr. Singh, you filed on behalf of a Federal claim was in this case? Ma'am, what happened is the case was removed. We filed a motion to remand saying that the local controversy exception, home state exception require a remand. And the court denied it. After the court denied it, we filed an amended complaint where we inserted a Federal claim. However, the Supreme Court precedents are very clear. For 200 years, the rule in this country is that jurisdiction should be considered from the time of filing. There are exceptions to that rule, though. Very narrow exceptions, which they cited. Why aren't they met here? That was a way of asserting jurisdiction, not trying to abandon Federal jurisdiction. Justice Scalia's It would be an affirmative declaration when you filed that Attila claim. Right. Right, Judge Pai. And that's the crux of their argument, is that Attila claim was subsequently filed, but that doesn't matter because the Supreme Court Why does that not matter? Well, Judge Scalia explains in his decision, groupo, which he wrote the majority opinion for, he says, caterpillar decision is a very limited exception. It's used in situations where there's diversity jurisdiction, and then it's defeated because the diverse party is dismissed. But this is not one of those cases. We don't have an issue of a diverse party being dismissed. Justice Scalia explains that caterpillar did not change the law. The law goes back 200 years, as he points out, in the groupo decision. And the law, which goes back to the case of Pullman and previous cases, says that when you're considering jurisdiction, you have to look at the complaint at the time of filing. And there are opinions from circuit courts in this country and district courts that apply that rule to CAFA and the local controversy exception. So it's necessary under the law and the mandates of precedent from the Supreme Court for this court to also, and for the district courts, have considered the complaint at the time of filing and at the time of remand, but not after remand was denied. At the time of removal, I mean. But not after the motion of remand was denied, the complaint was amended, but it's contrary to U.S. Supreme Court precedent to use that amended complaint as a basis for jurisdiction. And the cases are cited in our brief, and I think our reply brief does a very good job in answering their discussion of caterpillar and citing cases that have distinguished caterpillar and explained why it's so limited. In fact, caterpillar itself, the case that they rely on, is not even a case about jurisdiction. It's a case about a statutory defect. Judge Scalia explains that in the groupo Supreme Court opinion. The problem is that there's a congressionally passed statute which says that federal jurisdiction exists under certain circumstances. Based on that statute, in caterpillar they remove the case, and then later the basis for that jurisdiction was lost. So there was a defect in the jurisdiction provided by the statute. But here we're talking about not a statutory defect. We're talking about a jurisdictional defect. There's no jurisdiction. The court never had and never should have had jurisdiction. And by the way, jurisdiction is an issue you can raise at any time. I can raise it for the first time now if I wanted to. But fortunately, we had raised it before the district court, so there's this clean record for you to review. But even if I argued it now for the first time, it's an issue that you can still consider and remand on the basis of jurisdiction. So there's no way you can waive it by not arguing it or by filing amended complaint. It doesn't get waived. It's an issue that lasts. As Justice Scalia points out in the group with decision, you can raise this issue five and a half years later. You can raise it after a trial. You can raise it after a judgment on the merits. And that's ‑‑ in this case, we raised it much earlier, but we didn't have to. It's an important jurisdictional issue. So getting back to the key facts, ER 130 is a ‑‑ Why is there a tribal issue of fact? There are numerous facts, Your Honor, that ‑‑ Pardon me? So as I ‑‑ just help me understand this. So he thought he was getting three add-ons. Correct. Is that right? 3M, what were they called? 3M ‑‑ Well, they're on this next page, ER 130. They're listed right there in highlight. The first one is new car detail and dealer prep. And the second one is PROPAC. And the third one is ‑‑ PROPAC and 3M. Correct. And this is the first problem, this dealer sticker. This is all the explanation he ever got. According to our expert, Lou Lynette, whose declaration is in the record, a dealership should explain each of one of these items verbally and in writing and obtain a written signature of consent to purchase these items. Here, this is all the explanation he got. So it's inherently deceptive. They also were not provided. So new car detail is noted on this sticker as being included, as you see in highlight. This dealer added equipment and services. New car detail, none of us actually knew what it really meant. So we had to consult with an expert and try to figure out what did this mean. Even though we're lawyers and we're accustomed to looking over papers, we had trouble figuring it out ourselves. The salesman who worked there and sold this car had trouble understanding it. The customers do not understand it. So under the Consumer Protection Act in Washington, all you have to show is a tendency to deceive. You don't even have to show that someone is actually deceived. So, I mean, in and of itself, this sticker proves the case. So as we found out through depositions and by consulting with expert Lou Lynette, who's been working in the field for 40 years, new car detail and dealer prep refers to when a car is delivered from the manufacturer to the car dealer. It comes with plastic. And they have to remove the plastic, take off the stickers that affix that plastic to the car. They have to take off the covers on the seats and basically clean it up so that it's ready to sell. Now, that sounds fine, but the problem is the dealership already gets paid for that by the manufacturer. That cost is covered and it's included in the MSRP price. So if you turn to the MSRP sticker, which is two documents behind that or three documents behind that, you'll see at the bottom it says includes pre-delivery services. And here's the MSRP price. So our expert explained that that means pre-delivery services includes prep or new car detail. So it's already a part of the MSRP price. But what they've done here on this sticker is they've taken the basic MSRP price and they've added more, $399 more for new car detail and dealer prep. So they've charged twice for the same service. Once on the MSRP sticker and a second time on this small sticker, the dealer's addendum. So that's just one example. That's a duplicative charge. Our expert Lou Lynette says that's fraud. He also says he's never seen that at any dealership in his 40 years of work. We do, however, have also a presentation called Car Dealer Add-Ons. It was made at a conference by the, organized by the National Consumer Law Center. And in here they mention typical car dealer add-ons and deceptive practices. And this is one of them. They mention that this idea of prep. Here, the second to last page of that says that some dealers like to charge fees for work they have already been paid for by the manufacturer, such as getting the car ready for delivery to the customer, prep fees. It says look for double dipping. And this is just a textbook case. It's almost as if the dealership took this car dealer add-ons presentation of what not to do because they're deceptive practices and used it as a playbook on how to run their business. Because all the things that are highlighted in here are things they've been doing according to our expert, according to our client, Harvinder Singh, who purchased the car, according to the salesman who sold it to him, Ruhal Keshal, and according to anybody who takes a look at the paperwork. So the second item on this dealer's addendum sticker, they call it a dealer's addendum. We refer to it in the brief as small sticker because otherwise it's too much jargon. But part of the way they get away with this is because they're using a lot of jargon. Nobody knows what dealer prep means. The next bit of jargon here is ProPak. They charge $529 for it on the small sticker and it gets added to the price of the car. So what is ProPak? They don't explain it anywhere. There is a menu that lists, it's like a menu in a restaurant, one page, it's in the record, and it lists items you can purchase if you want to. And this is what it looks like. 2016 accessories, it's ER 185. And there it lists several types of protection package at the bottom and the price and what they include. Now the problem is they never use this menu. They never showed it to the customers. They never showed it to Mr. Singh. This menu does not appear in his file. It does not appear in any of the deal files. The salesman who worked for them testified in his declaration that they kept this hidden in a drawer. Okay, counsel, it's up to you how you want to handle your argument. But I thought you wanted to save some rebuttal time. Yes, sir. Thank you. Good morning, Your Honors, and may it please the Court. My name is Sean Commins on behalf of Defendant America Honda Finance Corporation. I'm sharing the time with the Defense Counsel for the dealerships. On jurisdictions, Your Honors, there's two lines of authority that control and determine that the Court had jurisdiction at the time of judgment. The first is Caterpillar from And the Supreme Court held the plaintiff had preserved the objection, but it nonetheless found that because there was jurisdiction at the time of judgment, that the adjudication could be upheld. And the second is this Court's decision in Retail Properties in 2014, where again a plaintiff objected to the removal of a case, filed a motion to remand, had preserved the issue, but then later filed a second amendment complaint that added a Federal claim. And this Court held, citing other circuit precedent, that if you amend your complaint after removal to add a Federal claim, then the jurisdictional question becomes moot. Going back to Caterpillar, doesn't Grupo limit Caterpillar to situations where the jurisdictional defect had been cured by dismissal of a party? I mean, doesn't Grupo state that Caterpillar is pretty narrow? So it does narrow Caterpillar in one respect, Your Honor, which is that it talks about Caterpillar being a statutory defect, because it was a removal. And the statute says you should have jurisdiction at the time of removal. And so here we'd be in the same position, which is that this would be a statutory defect under Grupo's own analysis. The other part about Grupo that's pretty narrow itself is it was talking about whether or not the citizenship of an individual party can be considered to be changed over time. And on that one, they were saying, no, we don't have precedent where the citizenship of a specific individual can change over time. In that case, particularly a partnership, right, where members can join and leave. And they said, we have to have a fixed rule for this. And that's why they picked the time of filing. On top of it, Grupo wouldn't explain this Court's decision in 20, 10 years later, in 2014, in retail properties. And there's also PEGRM, a Supreme Court decision in 2000, where the same thing happened. It was a removal. The plaintiff amended, added a federal claim, and the Supreme Court said, we have jurisdiction. This Court did the same thing in Chabner in 2000 as well. So unless the Court has further questions about the jurisdiction of the district court, I'll move on to, I'm happy to address 56D, if the Court has any questions on that. The short version is, the plaintiffs argued in their brief that the district court precluded discovery. And that's not accurate. Two days after removal, the district court issued two orders. One saying, urging the parties to discuss discovery. And the second saying, if there are any issues with the discovery, call me on the phone. I can resolve it on an expedited basis. So depending on which way the Court wants to look at it, plaintiff either had roughly seven months from the time of removal to conduct discovery, four and a half months from the time the motion to remand was denied, or three months from when the defendants filed as positive motions and when the plaintiff had to file their opposing papers. And the record shows that, as to America Honda, the plaintiff waited until roughly two weeks before that deadline, which had been moved twice, to serve requests for production and interrogatories. The other point the plaintiff raised was depositions. That is not a basis that the plaintiff raised below with the district court for delaying the summary judgment motion. And so clearly, the district court was well within its discretion to find that the plaintiff did not act diligently in pursuing discovery and failed to satisfy the affidavit requirement of identifying specific documents and then explaining why those documents would have impacted the outcome of this case. As far as the merits, Your Honors, I didn't hear anything about the merits as to America Honda. And in fact, in the reply brief, they don't respond at all. The main merits argument the plaintiff has been pushing was that there was a provision in what's called the RISC, the Retail Installment Sales Contract. And that provision is called a holder notice. And the holder notice says that you can assert a defense against someone else that you might have had against the original seller. On this issue, plaintiff had their own RISC. Sorry, do you have a question? No, no question. The plaintiff had a copy of this document from the outset. It was produced by the dealership in related discovery. In addition, two copies of this document were produced to plaintiff in connection with the briefing on the motion to remand. And the last point, and maybe the most important, is that it's immaterial because there's two reasons why plaintiff could never bring a claim against Honda based on what's called the holder notice. One, it's precluded by TILA in this instance. And the second is there's no private right of action except unless the theory is that the car was worthless. And that's not the theory that's been advanced here. And plaintiff offers no response to these arguments in the reply brief. And that's why, much like the argument about the motion to strike, these are much ado about nothing because they don't impact the outcome of the appeal. They don't relate to the merits. These are procedural arguments that actually end up going nowhere. Well, unless, while I do like addressing the court, I will hand off the time unless there's any questions about jurisdiction or some other issue. Thank you very much for your time. Good morning, Your Honors. May it please the Court. Aaron Renche representing the dealership defendants. I will defer to Mr. Common's arguments on the jurisdictional issues, which we did not take a position on at the trial court. It is undisputed that Mr. Singh went to the dealership to buy the car. He saw the car he wanted. He selected the car he wanted. He negotiated a price for the car. And the next day, he went back, signed the papers at that price, and was delivered exactly the car that he had said he wanted with a few upgrades which were specifically called out in the vehicle purchase order that he signed. Now, what plaintiff's position is, is that he was somehow entitled to additional upgrades that are not listed in the contract based on the small sticker that was placed on the window. In terms of plaintiff's contract claim, Judge Kuhnauer correctly found that that sticker was not part of the contract. It was not expressly and unequivocally incorporated by reference into the documents that Mr. Singh signed. It was not mentioned at all. The plaintiff's, therefore, the argument that somehow there was a contractual duty to provide those items, to follow the window sticker, is disposed of by that finding. The plaintiffs have offered an alternative argument that they can also use this window sticker as extrinsic evidence to clarify terms. Washington law is very clear that extrinsic evidence can be used to clarify the party's intent with respect to specific terms if they're ambiguous, but it cannot be used to add terms or vary terms that are in the contract. Here, what plaintiffs seem to be arguing, since they haven't been able to find an actual ambiguous term, they have said that the term vehicle is ambiguous and that the window sticker could be used to clarify the meaning of what vehicle it was. But that is not true. There was no ambiguity about what vehicle was. The vehicle he wanted to purchase was the vehicle that he had looked at the day before and said, I want that vehicle. And that is the vehicle that he got. What the plaintiffs are doing is using this extrinsic evidence in the sticker to argue, well, he should get extra upgrades beyond the vehicle that he looked at and beyond what was listed in the contract. That is an impermissible use of extrinsic evidence under Washington contract law. Let me just ask, can you go to the contract? I guess it's the contract. And it states, starts off at the base price of the vehicle is $27,358.79. Correct. So as a consumer, how do you know what you're getting? Well, you know what you're getting because you were shown the product that you're buying and you said, that's the product I want. And they deliver you that product. Well, but, you know, suppose they tell you we're going to clear coat your car. That's also included in the $27,355. That's not mentioned anywhere in the contract that they're going to clear coat the car. No, I know. I'm just saying suppose. I mean, suppose you negotiate a deal and one of the things you come out with is, I want the car clear coated. I would say if. Does clear coat have to be listed in order for it to be part of the contract? If it was not on the vehicle that you looked at and said, I want to buy that car, and you were expecting them to add an item to the car that you said you wanted after you agreed to buy it, then that needs to be listed. You shouldn't expect that there's going to be upgrades made to the product that you agreed to purchase. So if I negotiate a deal and part of the deal is to clear coat my car, the car, protect the paint, the clear coating from what you're telling me would be listed separately on the contract. So it says where this says base price of vehicle. And then number two is dealer added or. I can't really make it. Dealer added or deleted options, I believe it says. Yeah. The clear coat would be listed there. Is that what you're telling me? Yeah, that's what I'm saying. If there were, if, well, it could also, as we can see from the documents in this case, it could have also been listed in the vehicle purchase order because there were upgrades that were made to the car. They're not listed here, but they were made to the car. So you have to read this contract with the purchase order? I think in this case you would have to because it's not listed in the contract. The section that you're looking at is an itemization of the pricing. Yes. Well, that's what I just want to know because everybody says you keep saying that, well, if it's a real true add on, it would be listed. But it would be listed somewhere in the contract documents. And I forgot where that would be. And I guess what you're telling me would be right here in number two. I think if there was an additional price added on to the price that they were charging for the vehicle. So your base price of the vehicle, this is the price we've agreed to sell you the vehicle at. Right. Second line, this is a list of pricing. The second line is additional items that we are charging you for. Okay. So in the price list, they're just saying there's no items that we are charging you extra for. Now, he did sign this vehicle purchase order, which says we're selling this car with pro package, which means mud flaps, trunk tray and wheel locks, and with what they say prep, which everyone agrees means new car detailer and prep. But it doesn't say anything about a clear coating on the car. Now, having signed that document, having given it, and I think that he would have an argument that this is part of the contract. If they hadn't given him those things, he could have gone back and said, you said you were giving me these things and I should get them. That was part of the deal. Would it be better if it was listed on the contract? Yes. The district court said he got those things. Everyone agrees that he got those items that are listed in the vehicle purchase order. No, but they have not disputed that he got mud strays, locks and the prep. We have internal invoices that confirm that. And Mr. Singh has he didn't get the protective coating, which is not mentioned anywhere in the contract documents. And he said that the pro package should have included all season floor mats, which is not listed anywhere in the contract documents. Now, it is, there's uncontradicted evidence from the dealership defendants, their witnesses, that what 3M and the sticker referred to was the door edge guards, which actually nobody disputes those were on the car. Plaintiffs have misrepresented the record and saying that dealership defendants' witnesses said that that 3M refers to the clear coating. Mainly, they cite several pages. Most of those pages are to their own witnesses' declaration. Only one of those pages cites the testimony from one of the dealership defendants' witnesses. And he acknowledged that there were several names that they used for that protective coating, but none of them was the simple term 3M. There were a couple of the names included 3M and a modifier, 3M full kit or 3M clear bra. And that was consistent with the other documents that have been produced that when somebody buys the protective coating, it's called 3M full kit in the contract documents. And the plaintiffs actually did submit copies of contracts from other transactions where the people did purchase the clear coating, and that is listed as 3M full coat with a $999 charge in exactly the place on the contract that we were talking about. In the end, Mr. Singh never claimed that he had any expectation that he was getting a clear coating on this car. He said he didn't know what 3M meant. The salesman who sold him the car, who was the friendly witness to the plaintiffs, said he knew it wasn't on the car when they sold it. And nobody has ever claimed that he was told that it was on the car. Therefore, the idea that he was somehow misled or disleaved, or into thinking that it was on the car, or the idea that somehow there was a meeting of the minds that it would be on the car under contract law, there's simply no support in the record for that. I see my time is just about to run out, so unless the court has other jurisdictions, I'll simply, other questions, I'll simply ask the court to... Any questions? Okay. There are no questions, I think. Okay, and then I would respectfully ask the court to affirm Judge Kounoura's correct decision below. Thank you for your time. Your honors, Mr. Singh came into the dealership, he saw the stickers on the car, and he decided to buy it. He thought those things in the sticker were on the car, and we have that in the record. So what exactly is he saying he contracted to get and didn't get? A 3M clear coating on the front of the car. He thought it was there, and later found out it wasn't, and because it wasn't, he had to pay a third party a thousand dollars to add it. If he'd known it wasn't there, he could have just as well paid the dealership to add it. The dealership has taken the... After the lawsuit was filed, they sent letters to some of their customers saying, come in and we'll put on the car. We didn't install it, but you paid for it. Come in and we'll put it on. According to our expert, there should have been a WEOU notice. If they're not going to install it at the time of purchase, then they have to give you a WEOU notice to remind you to come in and have it installed. There's no WEOU notice in Mr. Singh's file. So he paid for it, he thought he was going to get it, he didn't get it. He didn't get any of the things he paid for. He didn't get a second new car detail because you can only do that once. You only take the stickers and plastic off once. He did not get the ProPact because he didn't know exactly what it was, but now that we've looked at the paperwork, there's a certain type of floor mat that's included that he did not get. And getting to the merits as to what issues are disputed, issues of fact that were material, well, he didn't get the products. He paid for them. They were not free. They'd say they were. He did suffer damages. The district court said he did not. He also was seeking statutory civil penalties, regardless of whether he suffered damages, as well as injunctive relief and a declaratory judgment. The district court said he suffered no damages and had seeking no relief, essentially, that he could pursue. The district court said that American Honda had no obligations outside of the front page of the risk, the retail installment sales contract. But the back of it says American Honda is liable for everything the dealership defendants do. The district court said that American Honda had no knowledge of the misconduct. Our record shows they did. Counselor, your time is up. Thank you, Your Honor, for the privilege to argue here today. I appreciate it.
judges: Gould, Paez, Bashant